IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEWART V. BRAGG | § | |
| Plaintiff, | § § § | |
| VS. | § § | NO. 3-09-CV-1931-N-BD |
| DR. ABRAHAM SAFEEK, ET AL. | § § § § | |
| Defendants. | § | |

## MEMORANDUM ORDER

Plaintiff Stewart V. Bragg, by and through his attorney, has filed a motion for leave to amend his complaint to clarify the issues before the court and to join as defendants: (1) Dallas County, Texas ("the County"); (2) Dallas County Hospital District d/b/a Parkland Health & Hospital System ("DCHD"); and (3) Dr. Esmaeil Porsa. Defendants do not object to the proposed amendment insofar as it relates to plaintiff's original claims or makes new allegations against current parties. However, defendants argue that joinder of the County, DCHD, and Dr. Porsa is inappropriate because plaintiff's allegations against those parties would not survive a Rule 12(b)(6) motion to dismiss. The parties have briefed their respective positions in a joint status report filed on December 2, 2010, and the motion is ripe for determination.

Rule 15(a) allows a party to amend its pleadings with leave of court, and "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Although a district court has broad discretion in deciding whether to grant leave to amend, the Fifth Circuit has long recognized that Rule 15(a) evinces a liberal amendment policy. *See Lowery v. Texas A&M University System*, 117 F.3d 242, 245 (5th Cir. 1997). Thus, leave to amend should be granted almost as a matter of

course unless there is: (1) undue delay, bad faith, or dilatory motive on the part of the movant; (2) undue prejudice to the opposing party; or (3) the proposed amendment is futile. *See Inclusive Communities Project, Inc. v. U.S. Dept. of Housing and Urban Development*, No. 3-07-CV-0945-O, 2009 WL 3446232 at *1 (N.D. Tex. Oct. 26, 2009) (citing cases). If an amended pleading fails to state a claim against a new party, the proposed amendment is futile. *See Stripling v. Jordan Production Co., Ltd.*, 234 F.3d 863, 872-73 (5th Cir. 2000) ("[T]o determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6).").

In his proposed second amended complaint, plaintiff attempts to sue the County and DCHD under a theory of municipal liability for violating his right to adequate medical care as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. A municipality may be held liable for federal civil rights violations under 42 U.S.C. § 1983 if its policies or customs cause a constitutional tort. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). To state a claim, plaintiff must "plead facts showing that a policy or custom existed, and that such custom or policy was the cause in fact or moving force behind a constitutional violation." *McClure v. Biesenbach*, 355 Fed.Appx. 800, 803, 2009 WL 4666485 at *2 (5th Cir. Dec. 9, 2009). Where, as here, the plaintiff does not allege that the municipality directly inflicted the injury, but rather that a policy or custom has caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Bd. of County Commissioners v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 1389, 137 L.Ed.2d 626 (1997).

Judged against these standards, the court determines that plaintiff's claims against the County and DCHD, as alleged in his proposed second amended complaint, are insufficient to survive dismissal under Rule 12(b)(6). In support of his municipal liability claim, plaintiff relies on two

reports criticizing the medical care provided to inmates at the Dallas County Jail. According to plaintiff:

> In December 2004, the County contracted with Health Management Associates ("HMA") to perform a comprehensive review of the medical and mental health services at the Jail. The HMA Report noted that inmates at the Jail failed to receive timely care which resulted in increased hospitalization and that a number of inmates were "re-admitted [to the hospital] multiple times for the same condition, indicating a failure to follow-up with an adequate management strategy, necessitating repeated and unnecessary admissions." The report concluded that "the quality of medical care is extremely incompetent." As evidenced by later reports issued by the United States Department of Justice, Dallas County failed to address the issues raised in he [sic] HMA's 2004 report and was still provided extremely incompetent care to inmates at the time Bragg was incarcerated.
>
> Specifically, in 2006 and 2008 the DOJ investigated the conditions at the Jail and issued two reports of its findings (respectively, the "2006 Report" and "2008 Report"). The 2006 Report specifically noted that "Dallas County's practice, custom, or policy to fail to provide prompt or adequate medical care to inmates" was the moving force behind such constitutional violations as Bragg complains. The report also noted that "Jail staff frequently mismanage inmates' acute medical needs, thereby significantly delaying appropriate medical care." The DOJ found "numerous instances where the [Jail's] mismanagement contributed to preventable deaths, hospitalizations, and unnecessary harm." Likewise, the 2008 Report stated that, as of October 2008 (the month Bragg was incarcerated) infirmary care and tracking chronic illness "remain as significant obstacles." The DOJ noted that "nurses do not triage and see patients in a timely manner," and uncovered instances of delay in meeting appointments for outside specialty medical care.

(*See* Plf. Prop. Sec. Am. Compl. at 14-15, ¶¶ 54-55). Not only are these allegations about the HMA and DOJ reports largely conclusory, but plaintiff has not shown how the customs and practices criticized in those reports were a "moving force" behind the specific constitutional violations made the basis of this suit -- the failure of jail doctors and nurses to examine, discover, and treat a chest injury that developed into a serious abscess requiring surgery and the removal of a rib. The mere fact

that the HMA and DOJ reports address the same general constitutional issue challenged by plaintiff -- the denial of prompt and adequate medical care to inmates at the Dallas County jail -- does not come close to establishing a patten of similar incidents known and approved by policymakers, much less deliberate indifference on the part of those policymakers. *See Wright v. City of Dallas*, No. 3-09-CV-1923-B, 2010 WL 3290995 at *2-3 (N.D. Tex. Jul. 19, 2010), *rec. adopted*, 2010 WL 3291816 (N.D. Tex. Aug. 19, 2010), citing *Davenport v. City of Garland*, No. 3-09-CV-0798-B, 2010 WL 1779620 at *2-3 (N.D. Tex. Apr. 9, 2010); *cf. Duvall v. Dallas County*, No. 3-07-CV-0929-L, 2008 WL 4561563 at *3 (N.D. Tex. Oct. 10, 2008) (evidence that policymakers were aware of MRSA outbreak at jail held sufficient to overcome summary judgment in lawsuit brought by prisoner who contracted MRSA). Were it otherwise, any prisoner who allegedly received inadequate medical care at the Dallas County Jail between 2004 and 2008 could assert a municipal liability claim against the County based solely on the contents of the HMA and DOJ reports. Because plaintiff has failed to plead facts to support a section 1983 claim against the County and DCHD, his proposed amendment seeking to join these entities as parties is futile.

The court reaches the same conclusion regarding plaintiff's claims against Dr. Esmaeil Porsa. In denying an earlier motion for leave to join Dr. Porsa as a party,[1] the court held that plaintiff's allegations involved "nothing more than a disagreement over the course of medical treatment that is not actionable under 42 U.S.C. § 1983." *Bragg v. Safeek*, No. 3-09-CV-1931-N, 2010 WL 2366005 at *1 (N.D. Tex. Jun. 9, 2010) (citing cases). The same is true for the new allegations against Dr. Porsa. In his proposed second amended complaint, plaintiff alleges:

- Dr. Porsa was a physician responsible for plaintiff's medical care during his time at the jail. (*See* Plf. Prop. Sec. Am. Compl. at 2, ¶ 8);

---

[1] At the time plaintiff filed his first motion for leave to join Dr. Porsa, he was proceeding *pro se*.

- Plaintiff first met with Dr. Porsa on May 1, 2009. Dr. Porsa decided to cauterize the abscess in his chest with silver nitrate. Despite plaintiff's complaints and Dr. Porsa's ability to access the prior diagnoses, "there is no record that Porsa ever attempted to diagnose or treat the underlying *cause* of plaintiff's recurring external wound." (*Id.* at 8, ¶ 32) (emphasis in original);

- Around July 8, 2009, Dr. Porsa proposed an alternative solution; that is, to vacuum out the wound. Dr. Porsa refused to order a CT scan or MRI to diagnose the underlying injury, stating that plaintiff's condition was not a medical emergency and he could either proceed with the wound vac and silver nitrate or wait months for a CT scan or MRI. (*Id.* at 9, ¶ 36.

- Dr. Porsa "was aware that Bragg had developed an infection and that the wound in his chest would not heal, yet he disregarded that risk by failing to take reasonable and timely measures to abate it." Dr. Porsa refused to send plaintiff to the hospital for treatment, and ignored plaintiff's pleas for help. As a result of the delays caused by Dr. Porsa, plaintiff developed an abscess which required admissions to Parkland Hospital, two surgeries, and the removal of one rib. (*Id.* at 12-13, ¶¶ 47-48).

- Dr. Porsa delayed medical treatment and failed to take reasonable measures to abate a known substantial risk. (*Id.* at 18, ¶ 68).

Like plaintiff's earlier attempt to join Dr. Porsa as a party, his allegations of deliberate indifference are either wholly conclusory in nature, or involve nothing more than a disagreement over the course of medical treatment.

For these reasons, plaintiff's motion for leave to file an amended complaint and join additional parties [Doc. #70] is granted in part and denied in part. The motion is granted to allow plaintiff to file an amended complaint clarifying his existing claims against the current parties. Plaintiff may amend his complaint by **December 23, 2010** for that limited purpose. In all other respects, the motion is denied.

SO ORDERED.

DATED: December 13, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE