IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEWART V. BRAGG                          §
                                          §
            Plaintiff,                    §
                                          §
VS.                                       §          NO. 3-09-CV-1931-N-BD
                                          §
DR. ABRAHAM SAFEEK,                       §
ET AL.                                    §
                                          §
            Defendants.                   §

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendants Abraham Safeek, Deborah Stevens, Cathy S. Pavelka, and Dianne Urey -- all of

whom are employed by the Dallas County Hospital District and assigned to work at the Jail Health

Department -- have filed a second motion for summary judgment in this prisoner civil rights action

brought under 42 U.S.C. § 1983.[1] In his most recent pleading, plaintiff alleges that defendants either

ignored or unreasonably delayed medical treatment for his worsening chest injury while he was

incarcerated in the Dallas County Jail. Because this condition was not treated appropriately, plaintiff

contends that an external wound developed that leaked blood and pus for many months. Although

he made at least 36 sick call requests, plaintiff complains that defendants saw him only 13 times,

often after long delays, and ignored a lump that had developed in his chest area. Eventually, plaintiff

was diagnosed with a chronic rib infection, which caused an abscess and required two surgeries to

---

[1] Defendants filed their first motion for summary judgment when plaintiff was proceeding *pro se*. After determining that counsel should be appointed to represent plaintiff, the court denied the motion without prejudice, authorized the parties to conduct limited discovery, and established new deadlines for amending pleadings and filing dispositive motions. (*See* Docs. #58, 61, 66, 67).

correct. Defendants now move for summary judgment on their qualified immunity defense and the issue of causation. The motion has been fully briefed by the parties and is ripe for determination.[2]

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

Here, defendants move for summary judgment on their qualified immunity defense. "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winston v. City of Shreveport*, 390 Fed. Appx. 379, 383, 2010 WL 3190709 at *3 (5th Cir. Aug. 12, 2010), *quoting Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct.

---

[2] In their summary judgment pleadings, plaintiff and defendants raise a number of objections to evidence submitted by the other party. (*See* Plf. 2nd MSJ Resp. Br. at 9-15; Def. 2nd MSJ Repl. Br. at 1-3). None of this evidence, even if considered by the court, affects the disposition of the motion. Consequently, the objections are overruled as moot. *See Continental Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3-04-CV-1866-D, 2006 WL 984690 at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that is not considered by the court in deciding motion for summary judgment).

2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has established a two-step analysis to determine whether government officials are entitled to qualified immunity. First, the court must decide "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *see also Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir.), *cert. denied*, 125 S.Ct. 102 (2004). Second, the court must ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 129 S.Ct. at 816, *citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). A court has discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first "in light of the circumstances in the particular case at hand." *Id.* at 818. Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002), *cert. denied*, 123 S.Ct. 1355 (2003). This burden applies both at trial and on summary judgment. *Id.*; *see also Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). A plaintiff must rebut the defense by establishing that the allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). In order to overcome the defense of qualified immunity at the summary judgment stage, the plaintiff cannot rest on conclusory allegations or assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the defendant's conduct. *Id.*

The right to adequate medical care while incarcerated is clearly established under the Eighth Amendment to the United States Constitution. *See Monceaux v. White*, 266 Fed.Appx. 362, 365, 2008 WL 459813 at *2 (5th Cir. Feb. 21, 2008), *citing Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). To establish a constitutional violation based on the denial

of medical care, a plaintiff must show that officials acted with deliberate indifference such as to cause the "unnecessary or wanton infliction of pain[.]" *Gamble*, 97 S.Ct. at 291. This, in turn, requires proof that defendants were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996), *citing Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 1984, 128 L.Ed.2d 811 (1994). "Deliberate indifference is an extremely high standard to meet." *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Delay in providing medical care does not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Nor does an incorrect diagnosis or a disagreement with medical treatment constitute deliberate indifference. *See, e.g. Domino*, 239 F.3d at 756; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Rather, a plaintiff must show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Stated differently, a plaintiff must plead and prove a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs[,]" *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1460 (5th Cir. 1983), and that defendants knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.), *cert. denied*, 120 S.Ct. 249 (1999), *quoting Farmer*, 114 S.Ct. at 1979.

The summary judgment evidence shows that plaintiff was booked into the Dallas County Jail on October 13, 2008, at which time he told an unnamed medical provider that he had an "internal lump" around his rib cage area. (*See* Plf. 2nd MSJ Resp. App. at 2, ¶ 3). Over the next 10 months

while plaintiff was incarcerated in the jail, he filed approximately 36 sick call requests, or "kites,"

seeking medical care for his worsening chest injury. (*Id.* at 29-88). Records submitted by the parties

document that plaintiff was seen more than *100 times* by members of the jail medical staff, including

12 visits with the named defendants. (*See* Def. 2nd MSJ App. at 8-257, 1884-1903). Specifically:

- Abraham Safeek, a medical doctor, assessed plaintiff on October 23, 2008, 10 days after he was booked into the Dallas County Jail. At that time, plaintiff complained of stomach or rib pain on his left side, but Safeek did not detect any lesion, palpable lump, or associated tenderness. Safeek ordered a chest x-ray, which was normal, and prescribed pain medication. He did not examine plaintiff again until September 14, 2009, after plaintiff returned to the jail from Parkland Hospital following surgery. (*See id.* at 17-18, 110-13, 945-48, 949-50).

- Deborah Stevens, a nurse practitioner, saw plaintiff five times between December 2, 2008 and February 5, 2009. On December 2, plaintiff reported a "large nodule on his left rib cage area" that was causing him significant pain. Stevens performed a comprehensive physical exam and concluded that plaintiff had a superficial abscess of the anterior chest. She ordered pain medication, oral antibiotics, and daily wound care, and scheduled a chest x-ray. On December 23, Stevens conducted a follow-up examination and observed that the abscess was healing. She renewed her orders for pain medication, oral antibiotics, and daily wound care, and allowed plaintiff to keep the antibiotics on his person so that he would not miss a dose. When Stevens examined plaintiff on January 7, she noted decreased redness and hardness, cultured the area to rule out infection, and ordered additional oral antibiotics and daily wound care. Twelve days later, on January 19, Stevens examined plaintiff and observed an open area draining a scant serous discharge. She ordered an antibiotic cream, a new oral antibiotic, additional pain medication, and continued wound care. Stevens examined plaintiff again on February 5, at which time she ordered an oral antibiotic and twice-daily wound care, including an antifungal cream. Due to what Stevens perceived as hostile and threatening conduct by plaintiff, she arranged for further

care to be provided by other members of the jail medical staff. (*See id.* at 20-21, 29-31, 39-45, 962-72).

- Cathy S. Pavelka, a medical doctor then assigned to treat HIV patients at the jail, was consulted on two occasions to assist with plaintiff's medical care. On February 12, 2009, Pavelka was asked to examine plaintiff's chest wound, which appeared to be inflamed, had a blue/purple color, and had a "very odd looking central protrusion." Pavelka recommended a biopsy. After that biopsy was performed, Pavelka met with plaintiff on February 23, 2009. She observed that the surgical wound had healed and removed four sutures. Pavelka also noted some disruption of the skin and seepage of yellow fluid from the wound site. She swabbed the seepage for culture, prescribed antibiotics, and scheduled plaintiff for a follow-up visit with another physician. (*See id.* at 57-58, 984-88).

- Dianne Urey, a physician assistant, examined plaintiff three times. On February 13, 2009, Urey performed an excisional biopsy of what appeared to be a 2.5 centimeter wound with a 6 millimeter opening that had protruding tissue. Three days later, on February 16, 2009, Urey checked the biopsy incision, provided supplies for wound care, and instructed plaintiff to apply ointment and dress the incision area twice daily. On April 1, 2009, Urey examined plaintiff and noted that his wound had purplish scar tissue with some tissue growing above the top layer of skin. She excised the wound, sent the excised portion to pathology for analysis, and sutured the wound closed. (*See id.* at 48-50, 52-53, 71-72, 1008-16).

Even when viewed in the light most favorable to plaintiff, the summary judgment evidence does not suggest that any of the defendants were deliberately indifferent to plaintiff's medical condition. At most, plaintiff has stated a claim for medical negligence, which is not actionable under 42 U.S.C. § 1983. *See , e.g. Fenlon v. Quarterman*, 350 Fed.Appx. 931, 932, 2009 WL 3444778 at *1 (5th Cir. Oct. 26, 2009), *cert. dism'd*, 130 S.Ct. 3418 (2010) (affirming dismissal of deliberate indifference claim where prisoner complained of a "pulsating lump in his stomach" for many years before it was properly diagnosed as an abdominal aneurysm). None of the cases cited by plaintiff

stand for the proposition that the repeated or prolonged misdiagnosis of an injury is the same as refusing to provide medical treatment. *See Easter v. Powell*, 467 F.3d 459, 463-64 (5th Cir. 2006) (finding deliberate indifference where heart patient complaining of chest pains was sent back to his cell without providing prescribed medication); *Harris v. Hegmann*, 198 F.3d 153, 154-55 (5th Cir. 1999) (same where prisoner who had been treated for a broken jaw informed jail officials that his jaw shifted after wires were removed, but was sent back to his cell without treatment); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (affirming dismissal of complaint alleging that jail officials were deliberately indifferent for requiring prisoner to undergo tuberculosis treatment without his consent despite potential health risks).

Plaintiff also alleges that defendants were deliberately indifferent to his serious medical needs by unnecessarily delaying his treatment and proper diagnosis. To the extent plaintiff claims that defendants delayed providing proper care for his internal chest injury while they treated only his external wound, such an allegation is nothing more than a disagreement over the course of medical treatment, which does not give rise to a constitutional violation. *See, e.g. Fenlon*, 2009 WL 3444778 at *2; *Norton*, 122 F.3d at 292. The suggestion by plaintiff that defendants violated his constitutional rights by delaying treatment after he submitted multiple "kites" ignores the fact that plaintiff was timely treated by other members of the jail medical staff throughout his incarceration. For example, plaintiff submitted seven sick call requests related to his rib cage injury between October 16, 2008 and November 27, 2008. (*See* Plf. 2nd MSJ Resp. App. at 29-42). Five additional sick call requests related to his chest injury were submitted by plaintiff between December 7, 2008 and January 27, 2009. (*See id.* at 43-50). In response, plaintiff was seen by members of the jail medical staff *22 times* -- October 23, November 4, November 20, December 2, December 4, December 8, December 9,

December 15, December 18, December 23, January 7, January 8, January 9, January 10, January 12,

January 16, January 17, January 18, January 19, January 21, January 25, and February 5. (*See* Def.

2nd MSJ App. at 11-45, 131-51). It is true that plaintiff's chest injury was not treated by a doctor or

a physician assistant between February 25, 2009 and March 23, 2009, and that jail officials failed to

transport plaintiff to his March 27, 2009 appointment with Dianne Urey. (*See id.* at 61-69, 1013; Plf.

2nd MSJ Resp. App. at 54-60). However, there is no evidence that any of these delays in care

resulted in substantial harm. *See, e.g. McGiffin v. Clayton*, No. 08-40213, 2009 WL 577721 at *1

(5th Cir. Mar. 6, 2009) (delays in treatment that do not cause lasting complications do not constitute

deliberate indifference); *Parker v. Doty*, No. 7-08-CV-029-O, 2009 WL 804098 at *2 (N.D. Tex. Mar.

25, 2009) (increased back pain caused by delay in receiving medication does not constitute substantial

harm). The cases cited by plaintiff to support his claim of unconstitutional delay are inapposite. *See*

*Coker v. Dallas County Jail*, No. 3-05-CV-0005-M, 2007 WL 3022575 at *18 (N.D. Tex. Oct. 17,

2007) (summary judgment denied where delay in transferring prisoner to hospital for treatment of a

serious leg infection resulted in several surgeries, pain and suffering, as well as disfigurement);

*Lentworth v. Potter*, No. 7-03-CV-156-BD, 2006 WL 1975199 at *4-5 (N.D. Tex. Jul. 14, 2006),

*aff'd*, 255 Fed.Appx. 903, 2007 WL 4183778 (5th Cir. Nov. 28, 2007), *cert. denied*, 128 S.Ct. 2485

(2008) (finding no deliberate indifference despite three-year delay in properly diagnosing prisoner

with diabetes and prescribing insulin).

<u>**RECOMMENDATION**</u>

Defendants' motion for summary judgment [Doc. #81] should be granted. Plaintiff's claims

against defendants should be dismissed with prejudice. The court should also deny plaintiff's request

for a Rule 56(d) continuance.  None of the additional discovery sought by plaintiff is essential to justify his opposition to the summary judgment motion.[3]

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  November 9, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[3] The federal rules permit a court to allow additional discovery before ruling on a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" FED. R. CIV. P. 56(d).  According to plaintiff, medical records produced after the close of discovery reveal that the signs of a fistula were present and ignored by defendants before his referral to Parkland Hospital.  Even if defendants were negligent in failing to discover and treat the fistula, it would not give rise to a constitutional violation. None of the discovery requested by plaintiff would assist in proving a claim of deliberate indifference.  *See Joseph v. City of Dallas*, 277 Fed.Appx. 436, 443-44, 2008 WL 1976619 at *8 (5th Cir. May 6, 2008) (district court did not abuse discretion in denying continuance of summary judgment proceedings where further discovery would not produce evidence creating a genuine issue of material fact).